# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



JUN 2 5 2004

| | | |
|---|---|---|
| ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM AND THE STATE OF LOUISIANA FIREFIGHTERS' RETIREMENT SYSTEM, | ) ) ) ) ) ) | |
| Appellants, | ) ) ) | Case No. 03-CV-7054 |
| | ) ) | Honorable Wayne R. Andersen |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE HOLDING COMPANY DEBTORS, | ) ) ) ) ) | |
| Appellees. | ) ) ) | Chapter 11 |
| | ) ) | Case No. 02-B-49672 |
| In re: | ) ) | |
| CONSECO, INC., et al., | ) ) | (Jointly Administered) |
| Debtors. | ) | Honorable Carol A. Doyle |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Appellants' appeal from a decision rendered by the United States Bankruptcy Court for the Northern District of Illinois. For the following reasons, the decision of the Bankruptcy Court is affirmed.

## BACKGROUND

Prior to the December 17, 2002 filing of the Debtor Conseco, Inc.'s bankruptcy cases, Plaintiffs filed class action lawsuits against the Debtors and certain individual defendants in the United States District Court for the Southern District of Indiana for securities fraud relating to the



purchase or sale of Conseco common stock. The parties to that litigation reached a settlement pursuant to which the Plaintiffs released all of their claims against the Debtors, the individual defendants, and the underwriter defendants in exchange for payments totaling $ 120 million. The settlement agreement was memorialized in a written contract, titled Stipulation of Settlement, signed and executed by the parties, including the Debtors, on May 21, 2002.

On August 7, 2002, the Indiana District Court approved the Stipulation of Settlement pursuant to an Order and Final Judgment. As of December 17, 2002, at the time of the filing of the Debtors' bankruptcy cases, Plaintiffs had not received full payment pursuant to the Judgment and Stipulation of Settlement. Plaintiffs sought to recover such payment by filing: 1) proofs of claim and interests for over $ 25 million plus interest against certain Debtors, respectively; and 2) an adversary proceeding against every Debtor.

The Debtors and Plaintiffs agreed to a mediation of the claims, adversary proceeding, and other related matters before Magistrate Judge V. Sue Shields in the United States District Court for the Southern District of Indiana. As a result of the mediation, the Debtors and Plaintiffs agreed that Plaintiffs' claim would be treated as an unsecured Class 8A claim in the reduced amount of $ 17 million. Plaintiffs agreed to refrain from asserting their interest in the Settlement fund. This compromise was subsequently memorialized by a written agreement that was approved by the Indiana District Court on May 19, 2003. The order approving that agreement also preserved the Holding Company Committee's ("Committee") right to object to the classification of the Plaintiffs' claim.

Plaintiffs asserted a general unsecured claim against the Debtors in the bankruptcy case. By doing so, Plaintiffs sought to share in the plan distribution to Class 8A Creditors, who are expected

to receive approximately 26.8% of their claims under the Holding Company Debtors' confirmed plan or reorganization, while holders of common stock shall receive nothing under such plan. The Committee objected to the classification of the Plaintiffs' claim, asserting that the claim must be subordinated to the claims of other unsecured creditors pursuant to Section 510(b) of the Bankruptcy Code, 11 U.S.C. § 510(b). On August 20, 2003, the Bankruptcy Court sustained the Committee's objection, ruling that Plaintiffs' claim arose from the purchase or sale of a security and must, therefore, be subordinated pursuant to § 510(b). Plaintiffs have appealed the Bankruptcy Court's decision.

At issue in this bankruptcy appeal is whether Plaintiffs' claim "arises" from the purchase or sale of Conseco common stock. The Bankruptcy Court sustained the objection of the Committee to Plaintiffs' claim and held that § 510(b), which requires the subordination of a claim for "damages arising from the purchase or sale of . . . a security" of the debtor, mandates the subordination of that claim to the level of Conseco common stock.

On appeal, Plaintiffs argue that the existence of the Settlement Agreement, purportedly under the principles of novation, has transformed the claim into one that does not "arise" from the purchase or sale of a security.

## DISCUSSION

The United States District Courts have jurisdiction over appeals from final judgments and final orders in bankruptcy cases pursuant to 28 U.S.C. § 158(a). We review the factual findings of the Bankruptcy court for clear error, but review questions of law de novo. Fed.R.Bankr.P. 8013; *In re Rivinius, Inc.,* 977 F.2d 1171, 1175 (7th Cir. 1992). Thus, there is no presumption of correctness

as to the Bankruptcy Court's conclusions of law. *In re Luria Steel and Trading Corp.,* 189 B.R. 418, 420 (N.D. Ill. 1995).

## I.    The Plain Language Of Section 510(b), Congressional Intent And Case Law Require That Plaintiffs' Claim Be Subordinated

In their appeal, Plaintiffs argue:   (a) that the Settlement Agreement and the accompanying judgment, purportedly through the principles of novation, have removed the claim from the scope of the statute; and (b) that § 510(b) does not apply to fraud.    We will address each of these arguments in turn.

### A.    The Language Of § 510(b) Is Unambiguous

It is clear that subordination pursuant to § 510(b) is mandatory, and the wording of the statute is plain and unambiguous:

> [A] claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, *for damages arising from the purchase or sale of such a security,* or for reimbursement or contribution allowed under Section 502 on account of such a claim, *shall be subordinated* to all claims or interests that are senior to or equal the claim or interest represented by such security, except *that if such security is common stock, such claim has the same priority as common stock.*

11 U.S.C. § 510(b) (emphasis added).  Statutory interpretation starts with the language of the statute, and when statutory language is clear and unambiguous, the inquiry must cease. *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253-54 (1992).  In this case, the language of the statute is not only clear, but also broad and encompassing.  Thus, if any claim, including the claim of the Plaintiffs, arises from the purchase or sale of a security, the claim *shall* be subordinated under the plan of reorganization. *See, e.g., In re Basin Resources Corp.,* 190 B.R. 824, 826 (Bankr. N.D.Tex.1996). There is no language limiting the nature of the securities related claims subject to subordination.

In this case, the facts are undisputed that the claim originated and resulted from the purchase or sale of a security. Plaintiffs have stipulated that "several securities fraud class actions for *damages arising from the purchase and sale* of Conseco, Inc. *common stock* were filed . . . ." Joint Stip. at ¶ 3 (R. at #3). Thus, the claim "arose" from the purchase or sale of a security within the meaning of the statute: were it not for the securities fraud claim relating to the purchase or sale of the common stock, there would have been no settlement and no judgment approving it. Thus, it is incontrovertible that there is a nexus and causal relationship between the claim and the purchase of Conseco common stock. *See, e.g., In re Telegroup, Inc.*, 281 F.3d 133, 138 (3d Cir. 2002). As such, the plain language of § 510(b) requires that Plaintiffs' claim be subordinated to the level of the other holders of Conseco's common stock, and the Bankruptcy Court was correct as a matter of law in so holding.

**B.    The Plaintiffs' Novation Argument Must Fail**

In an effort to avoid the natural operation of §510(b), Plaintiffs argue that, while the litigation arose from the purchase or sale of a security, the claim is based on the Judgment and the Stipulation of Settlement. This attempted sleight of hand ignores the plain meaning of the statute, including the plain meaning of the operative term "arising." Moreover, Plaintiffs' interpretation is at odds with the remedial purpose of the statute.

While Plaintiffs attempt to discredit the case law relied on by the Bankruptcy Court, Plaintiffs cite no authority, whether Seventh Circuit or otherwise, when a court has held that a claim that arose from the purchase or sale of a security is removed from the scope of § 510(b) based on a novation theory or the presence of a judgment. Indeed, if Plaintiffs' novation theory were accepted, it would be an easy way around the statute, undoubtedly leading to every pre-bankruptcy settlement

of a securities fraud suit being characterized as a novation. This, in turn, would make the application of the statute dependent upon whether a group of Plaintiffs were or were not able to settle their claims prior to the commencement of the debtor's bankruptcy case. Plaintiffs offer no persuasive explanation as to why that happenstance should determine the priority treatment of the underlying claim in bankruptcy.

Similarly, the Plaintiffs never explain how entering into a settlement prior to the filing of the bankruptcy petition truly alters the origin of the underlying claim or the policies underlying § 510(b). Nor could they. Had Conseco filed its bankruptcy petition prior to the securities fraud settlement, the claim would certainly be subordinated pursuant to § 510(b). *See, e.g., In re Cincinnati Microwave, Inc.,* 210 B.R. 130, 133 (Bankr. S.D. Ohio 1997). There is no rational explanation why a settlement agreement consummated just months prior to bankruptcy should dramatically alter the nature, let alone the treatment, of the underlying claim, particularly given the plain terms and purpose of § 510(b).

The novation theory was explicitly rejected in *In re Permian Producers Drilling, Inc.,* 263 B.R. 510 (W.D. Tex. 2000). In *Permian,* the court determined that, as a remedial statute, § 510(b) must be interpreted broadly in order to effectuate the intent of Congress and, thus, must apply notwithstanding the executed pre-petition settlement agreement:

> [S]ection 510(b) prevents a shareholder from converting his interest into a claim and sharing *pari passu* with other unsecured creditors. The fact that [a claim] is predicated on [a] settlement agreement does not alter the fact that the underlying claim is a claim for damages arising from the purchase of a security.

*Id.* at 520, quoting, *In re Granite Partners, L.P.,* 208 B.R. 332, 341 (Bankr. S.D.N.Y. 1997).

Therefore, the court determined that the claim was properly subordinated pursuant to

§ 510(b). *Id. See also Sendmygift.com, Inc.,* 280 B.R. 667 (Bankr. D. Minn. 2002); *In re Cincinnati Microwave, Inc.,* 210 B.R. 130 (Bankr. S.D. Ohio 1997).

For these reasons, we find that Plaintiffs cannot avoid the operation of § 510(b) under a novation theory and that the existence of the Judgment and Stipulation of Settlement is of no significance in interpreting that statute.

**C.     Section 510(b) Is Clearly Applicable To Claims Based On Fraud**

Plaintiffs next argue that § 510(b) is inapplicable to claims arising from fraud in the purchase or sale of securities. We find this argument to be without merit. First, a number of courts that have clearly stated that § 510(b) is applicable to securities fraud claims. *See, e.g., In re Betacom of Phoenix, Inc.,* 240 F.3d 823, 829 (9th Cir. 2001); *In re NAL Financial Group, Inc,.* 237 B.R. 225, 232 (Bankr. S.D. Fla. 1999); *In re Vista Eyecare, Inc., 283* B.R. 613, 626 (Bankr. N.D. Ga. 2002); *In re Geneva Steel Co.,* 281 F.3d 1173, 1177 (10th Cir. 2002); *In re Washington Bancorp.,* 1996 WL 148533, at *19 (D.D.C. March 19, 1996)

Both the provisions of the statute and the legislative history are unambiguous. Congress enacted § 510(b) primarily to subordinate securities fraud claims and confirm that the risk of illegality was to be borne by equity holders and not creditors. *See, e.g., Telegroup,* 281 F.3d at 141 (citing H.R. Doc. No. 93-137, pt. 1, at 22 (1973)). It is clear that when Congress enacted § 510(b), it intended that creditors be treated more favorably than equity holders under all circumstances. Congress determined that it is inappropriate for investors, regardless of their claims relating to the purchase or sale of their securities, to stand on the same footing as creditors for the purposes of

distribution of the estate. *See generally Telegroup,* 281 F.3d at 133; *Vista Eyecare, Inc.,* 283 B.R. at 613. In short, § 510(b) represents a Congressional judgment that, as between shareholders and general unsecured creditors, it is the shareholders who should bear the risk of illegality in the purchase and sale of stock in the event that the issuer enters bankruptcy. *Telegroup,* 281 F.3d at 141. Thus, it is clear that § 510(b) applies to security fraud claims.

## II.  The Plaintiffs' Purported Policy Arguments Cannot Change the Result Mandated by 510(b)

Plaintiffs next argue that the policy arguments underlying § 510(b) do not warrant the subordination of fraud claims and that there are better policy arguments to the contrary. First and foremost, these policy arguments are irrelevant. Courts do not have the discretion to ignore the plain meaning of the statute, as reinforced by its accompanying legislative history, and, in effect, amend a statute by judicial fiat.

Second, there are persuasive policy arguments as to why Plaintiffs should have their fraud claims subordinated to the level of Conseco common stock. Those argments are applicable in this very case. Under the confirmed plan of reorganization, the Class 8A unsecured creditors will not receive payment in full of their claims, but are projected to receive only approximately 26.8% of their claims. However, if the provisions of § 510(b) are ignored and the Plaintiffs' claim is allowed as a Class 8A claim, this 26.8% dividend will be diluted by a claim asserted on behalf of persons who were entitled to receive the benefits of common stock ownership when times were good and who would now be permitted to avoid the risks of common stock ownership when times are bad, exactly the result that § 510(b) was intended to prevent.

## CONCLUSION

For the foregoing reasons, the August 20, 2003 decision of the Bankruptcy Court is affirmed.

This is a final and appealable order. This case is hereby terminated.

It is so ordered.


_____
Wayne R. Andersen
United States District Court

Dated: June 24, 2004